| | |
|---|---|
| **UNITED STATES DISTRICT COURT** | |
| **FOR THE MIDDLE DISTRICT OF TENNESSEE** | |

| | |
|---|---|
| **NASHVILLE INK, INC., AND LIOR ROSE, INDIVIDUALLY**<br><br>*Plaintiffs*,<br><br>v.<br><br>**JOSEPH ROJAS, AND LORI ROJAS, EACH INDIVIDUALLY AND COLLECTIVELY, AND DOING BUSINESS AS "NASHVILLE INK"**<br><br>*Defendants.* | Case No. _____<br><br>**COMPLAINT FOR:**<br>  1. **Federal Service Mark Infringement**<br>  2. **Federal Unfair Competition**<br>  3. **Federal Service Mark Dilution**<br>  4. **Federal False Advertising**<br>  5. **Federal Cybersquatting**<br>  6. **State Service Mark Infringement**<br>  7. **State Unfair Competition**<br>  8. **State Service Mark Dilution**<br>  9. **State Deceptive Trade Practices**<br><br>**JURY DEMAND**<br><br>JUDGE:_____ |

Plaintiffs NASHVILLE INK, INC., and LIOR ROSE ("**Plaintiffs**"), by and through their counsel, Shrum Disney & Associates, for their Complaint against defendants JOSEPH ROJAS, and LORI ROJAS, each individually and collectively, and doing business as "NASHVILLE INK" ("**Defendants**"), allege, on knowledge as to their own actions, and otherwise upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1.     This is an action for infringement of Plaintiffs' long-standing common law, and federally-applied service mark NASHVILLE INK (Serial No. 99183869) under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), for unfair competition, including false designation of origin and false endorsement, under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A),  for federal service mark dilution under Section 43(a) of the Lanham Act, 15

U.S.C. § 1125(c) for false advertising and commercial disparagement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), for federal cybersquatting under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(d), and for substantial and related claims under the statutory and common laws of the State of Tennessee including service mark infringement under TENN. CODE ANN. § 47-25-516, unfair competition and deceptive trade practices under TENN. CODE ANN. § 47-18-104(b), and service mark dilution under TENN. CODE ANN. § 47-25-513(a), all arising from the Defendants' unauthorized and willful use of the mark Nashville Ink in connection with the marketing, advertising, promotion, offering for sale, and/or sale of Defendants' tattooing services.

2.     Plaintiffs seek injunctive relief, monetary relief, specific performance, and other appropriate relief arising from Defendants' willful acts of service mark infringement, unfair competition, cybersquatting, and deceptive trade practices.

## JURISDICTION

3.     This court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

4.     Personal jurisdiction over the Defendants is proper in this Court as both individual Defendants are domiciled in the State of Tennessee and therefore subject to general *in personam* jurisdiction in the district. Further, upon information and belief, the Defendants jointly and severally do business under the unregistered trade name "Nashville Ink," and have solicited and conducted business in the State of Tennessee, thereby purposefully availing themselves of the privilege of acting in the State of Tennessee.

2

**VENUE**

5.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that the Defendants reside in this district, under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims occurred in this district, and under 28 U.S.C. § 1391(b)(3), in that the Defendants are subject to personal jurisdiction in this district with respect to this action, and there is no other district in which the action may otherwise be brought.

**PARTIES**

6.     Plaintiff Nashville Ink, Inc. ("Nashville Ink, Inc.") is a corporation duly organized, incorporated, and existing under the laws of the State of Tennessee, since August 2009, and has its principal place of business at 330 Commerce Street, Nashville, Tennessee 37201.

7.     Plaintiff Lior Rose ("Plaintiff Rose") is an individual who resides at 9400 Atherton Court, Brentwood, Tennessee 37027 and a citizen of Tennessee. Plaintiff Rose is the sole shareholder of Nashville Ink, Inc. and is in the business of owning and operating tattoo studios under the trade name and service mark Nashville Ink (hereinafter "NASHVILLE INK") in and around Nashville-Davidson County, Tennessee. Plaintiff Rose is the creator and owner of the NASHVILLE INK service mark and trade name.

8.     Upon information and belief, Defendants Joseph Rojas and Lori Rojas (collectively either the "Individual Defendants," "Defendants Rojas" or each individually as "Defendant Joseph" and "Defendant Lori") are married individuals who reside at 2977 Burtonwood Drive, Spring Hill, Tennessee 37174 and are citizens of Tennessee. Upon

information and belief, Defendants Rojas have lived and/or worked in and around Spring Hill, Tennessee and/or Nashville, Tennessee since at least 2009.

9. Upon information and belief, Defendants' infringing business name "Nashville Ink" (hereinafter "Infringing Use/Mark") is not a formally organized business entity, but rather is the unofficial assumed name under which Defendants Rojas do business, providing tattooing services out of their residential home at 2977 Burtonwood Drive in Spring Hill, Tennessee, or on a tour bus for Defendant Joseph's band, including, without limitation, at locations in Tennessee, since November 2024.

**FACTS**

**A. <u>Plaintiffs and Their Service Mark</u>**

10. Plaintiffs provide tattoo services through their ownership and operation of tattoo studios in Tennessee. Plaintiffs have done business as NASHVILLE INK since August 2009 and have operated tattoo studios under this trade name in five locations throughout the Nashville-Davidson County metropolitan area at various times since August 2009. Their tattoo artists and customers seek them out from all over the United States ("US"). Attached as **Exhibit A** is a true and accurate copy of the business registration for Nashville Ink, Inc. filed with the Tennessee Secretary of State since August 25, 2009.

11. Plaintiffs have used the NASHVILLE INK service mark and trade name in commerce throughout the US, including, without limitation, at locations in Tennessee, continuously since at least 2009 in connection with the offering for sale, sale, marketing, advertising, and promotion of tattoo services. Attached hereto as **Exhibit B** are photographs and/or copies of Plaintiffs' website (*see* Exhibit B-1), storefronts (*see* Exhibit B-2), business cards (*see* Exhibit B-3), social media posts (*see* Exhibit B-4), news media coverage (*see* Exhibit

4

B-5), inclusion in a national television series (*see* Exhibit B-6), and recently updated logo (*see* Exhibit B-7) showing Plaintiffs' use of the NASHVILLE INK mark over the years in connection with their tattooing services, tattoo parlors, body piercing, and tattooing.

12.     As a result of their widespread, continuous, and exclusive use of the NASHVILLE INK mark, and the trade name NASHVILLE INK, to identify their tattooing services and the Plaintiffs as the source, Plaintiffs own valid and subsisting federal and state common law rights to the NASHVILLE INK mark.

13.     Plaintiffs' NASHVILLE INK mark and trade name is inherently distinctive to both the consuming public and particularly within the Plaintiffs' trade. By using a place name, Nashville, and an indiscriminate word, Ink, as a trade name this places Plaintiffs' mark among the inherently distinctive categories of arbitrary and suggestive marks. While the word "ink" does have a colloquial relationship to tattoos, in Nashville especially, this can also easily refer to the local book publishing industry, the songwriting and music industry, a calligraphy business, a stationery and invitation shop, a printing services business, or a photocopy/office supply store.

14.     Plaintiffs' have expended substantial time, money, and resources marketing, advertising, and promoting their tattooing services sold under the NASHVILLE INK mark including through multiple brick and mortar studio locations, website, Google listing, phone numbers, merchandise, and social media channels of Facebook, Instagram, and TikTok.

15.     Plaintiffs own and operate a website (https://www.nashvilleinktattoo.com) ("Plaintiffs' Website") through which they advertise, promote, and offer for sale their tattoo services under the NASHVILLE INK mark. Plaintiffs first established and began using this website for their business as early as August 28, 2009. Plaintiff Rose has continually updated this website to promote Plaintiffs' NASHVILLE INK's business.

16.     Plaintiff Rose, as a sole business owner, has additionally expended substantial time, effort, and resources promoting Plaintiffs' tattooing services by building an online brand presence under the NASHVILLE INK mark via a Google listing, and maintaining multiple social media channels, including Facebook, Instagram, and TikTok. Plaintiffs have worked significantly the past sixteen years to earn the respect of over 4.9K followers on Facebook garnering 625 reviews, 10.8K followers on Instagram, and over 1.4K reviews on Google.

17.     Plaintiffs offer and sell tattooing services under their NASHVILLE INK mark to members of the general public who seek professional tattoo artistry and related body art services. The consumers include adults of varying ages, backgrounds, and income levels who desire custom or predesigned tattoos for personal expression, aesthetic purposes, cultural significance, or commemoration of personal events. The relevant consumer base includes both local patrons and consumers who travel regionally or nationally to obtain tattoo services from a particular studio known for its name and reputation. The typical consumer of tattoo services is an individual who exercises a moderate degree of care in selecting a tattoo artist or studio, often relying on word-of-mouth reputation, online reviews, social media presence, and the distinct branding, style, and quality associated with a particular studio or artist. Consumers often associate tattoo services with the name and reputation of the tattoo studio as an indicator of source and quality. Because tattooing is a personal and permanent service, consumers are particularly attentive to the reputation, artistic style, cleanliness, and professionalism of the tattoo provider. However, confusion nonetheless occurs when competing tattoo studios use the same or confusingly similar names, as consumers may mistakenly believe that such services are offered by, affiliated with, or endorsed by the same source.

18.     Plaintiffs' NASHVILLE INK mark and the tattooing services offered thereunder have received significant unsolicited coverage in various media outlets, including Paramount Pictures/Spike TV's national television series dedicated to the tattoo artist trade "Ink Master: Angels." The episode "Music City Ink" aired on November 13, 2017, and was viewed that night alone by at least 411,000 Americans. (*see* Exhibit B-6). The Ink Master YouTube channel alone has 1.54 million subscribers and the specific episode, highlighting the background, business acumen, and artistry skills of Plaintiff Rose, has been viewed on YouTube alone over 140,000 times (*see* Exhibit B-6).

19.     The tattooing services Plaintiffs offer under the NASHVILLE INK mark are of high quality as evidenced by customer reviews on Plaintiffs' Website, customer reviews on their Facebook page, earning a 4.5 star Google rating with over 1.4K reviews (*see* **Exhibit C**), their business sophistication as evidenced by their business registration with the Secretary of State in Tennessee, a continuously growing customer base, and selection for inclusion in a national television series dedicated to exceedingly talented tattoo artists. The media and customer reviews frequently mention Plaintiff Rose specifically with praise, as his name is known in the tattoo trade in tandem with NASHVILLE INK.

20.     Plaintiffs are also an employer of twelve employees on average annually. In order to provide excellent customer service, properly trained team members, and a sanitary environment, Plaintiffs employ six to ten tattoo artists at any given time, two body art specialists, and two front desk staff. Despite being shut down during the COVID-19 pandemic and again following the Christmas Day bombing in downtown Nashville, Plaintiffs continued to pay and support their team members to avoid losing qualified and highly reputable professionals. After

the Defendants began posting their tattoo services, several current employees and artists seeking employment reached out to Plaintiffs believing the Defendants were affiliated with Plaintiffs.

21.     To further ensure the superior quality, and more importantly the safety of their customers, Plaintiffs diligently maintain the proper state-required tattoo studio certification, quarterly studio health department inspections, and strictly adhere to the tattoo artist registrations and licensing, as required by the statutory laws and health regulations of the State of Tennessee.

22.     As a result of the Plaintiffs expenditures and continuous efforts over the last sixteen years, the NASHVILLE INK mark has come to signify not only the high quality of their tattoo services, but also the safety of their tattooing services, as designated by the NASHVILLE INK mark, and has acquired incalculable distinction, reputation, and goodwill belonging exclusively to the Plaintiffs.

23.     Due to Plaintiffs expenditures and continuous efforts to build their brand both locally and nationally, adhere to high standards of safety and artistry, and to protect their excellent professional reputation, NASHVILLE INK provided tattoo and body art services to 22,534 customers in 2022 at an average of $125 per customer, to 23,676 customers in 2023 at an average of $135 per customer, and 18,984 customers in 2024 at an average of $143 per customer. Plaintiffs' clients have included world-wide celebrities from Miley Cyrus to Ronnie Dunn. Significantly, Plaintiffs' "cowboy" tattoo for Ronnie Dunn was prominently displayed in national tour promotions, including Las Vegas billboards, music industry magazines, major ticketing platforms, press releases, and numerous websites (*see* **Exhibit D**). This tattoo has been so widely published and admired that Brooks & Dunn now sell it as a temporary tattoo on their website (see Exhibit D).

8

24.     Plaintiffs have applied to the United States Patent and Trademark Office ("USPTO") for registration on the Principal Register for the NASHVILLE INK service mark in International Class 44 for tattooing services, tattoo parlors, body piercing, and tattooing. Attached as **Exhibit E** is a true and accurate copy of the registration application (Serial No. 99183869), which was submitted to the USPTO on May 13, 2025.

## B.   Defendants' Unlawful Activities

25.     Upon information and belief, Individual Defendants are engaged in, not only the same industry as Plaintiffs, but also the same line of business within the industry as Plaintiffs, namely, providing tattooing services, under the unofficial assumed name "Nashville Ink" ("Infringing Use/Mark") since at least November 2024.

26.     Upon information and belief, Defendants Rojas provide tattooing services out of their residential home, and/or on a tour bus for Defendant Joseph's band, under the assumed name "Nashville Ink" in and around Spring Hill-Williamson County, Tennessee, among other locations throughout the US. Importantly, Spring Hill is not located in the city of Nashville; rather, Spring Hill is its own distinct city, located approximately thirty miles south of Nashville.

27.     Using the unofficial trade name "Nashville Ink" to reference a location in Spring Hill, Tennessee is not only a misrepresentation generally, but this deception specifically misleads consumers to believe the Nashville Ink, Inc. entity is operating a second location in Spring Hill.

28.     Without Plaintiffs' authorization, beginning subsequent to when Plaintiffs acquired protectable exclusive rights in their NASHVILLE INK mark, Individual Defendants adopted and began using a mark identical to Plaintiffs' NASHVILLE INK mark in US commerce, on or about November 2024.

9

29.     The Infringing Use/Mark adopted and used by Defendants Rojas is identical to Plaintiffs' NASHVILLE INK mark. The standard characters which spell the words "Nashville Ink" are wholly identical to one another in pronunciation, appearance, verbal translation, meaning, and commercial impression.

30.     The Infringing Use/Mark adopted and used by Individual Defendants causes additional consumer confusion due to the similar appearance of the stylized words the Individual Defendants have adopted as their logo as the appearance of the Plaintiff's stylized words in their recent logo (*see* **Exhibit F**). Individual Defendants additionally chose to use a *rose* as the sole symbol image included in the Infringing Use/Mark, which, perhaps not so coincidentally, is the same symbol representing Plaintiff Rose's surname.

31.     In comparing the Infringing Use/Mark adopted and used by Defendants Rojas to Plaintiffs' NASHVILLE INK mark within the context of the marketplace, the similarity further entrenches as they are identical marks being used for directly competitive services, tattooing. Where competition is direct and the marks are abundantly similar consumer confusion results.

32.     Upon information and belief, Individual Defendants have engaged in the advertising, promotion, offering for sale, and sale of tattooing services using the Infringing Use/Mark throughout the US, offering tattoo services from their residential home or Defendant Joseph's band's tour bus, and most pointedly in the middle Tennessee region. Attached hereto as **Exhibit G** are photographs and/or copies of Defendants' Website (*see* Exhibit G-1), "private studio" (*see* Exhibit G-2), and social media posts (*see* Exhibit G-3) showing Defendants Rojas use of the Infringing Use/Mark and their advertisements promoting tattoo services offered.

33.     Upon information and belief, the tattooing services Defendants Rojas have marketed, advertised, promoted, offered for sale, and sold under the Infringing Use/Mark are the identical type of services, namely tattooing services, as offered by Plaintiffs.

34.     Upon information and belief, Individual Defendants have marketed, advertised, promoted, offered for sale, and sold its tattooing services under the Infringing Use/Mark via trade channels which are the same trade channels as Plaintiffs use to market, advertise, promote, offer for sale, and sell their services under their NASHVILLE INK mark. Namely, for their website address, Individual Defendants use an Infringing Use/Mark domain name for the URL (https://www.nashvilleink.com) ("Defendants' Website"), Google listing, phone number, and similar social media channels, including Facebook, Instagram, and TikTok. Defendants appear to have begun using the Infringing Use/Mark domain name and website, along with social media profiles, as early as November 2024. Defendants' Website and social media profiles show the use of the NASHVILLE INK word mark included in the logo drawing and in the text of the site and posts.

35.     Upon information and belief, Individual Defendants, doing business as "Nashville Ink," offers and sells its tattooing services under the Infringing Use/Mark to the same consumer base from members of the general public who seek professional tattoo artistry and related body art services. The consumers include adults of varying ages, backgrounds, and income levels who desire custom or predesigned tattoos for personal expression, aesthetic purposes, cultural significance, or commemoration of personal events. The identical consumer base includes both local patrons and consumers across the region and nation seeking to obtain tattoo services from a studio known for its name and reputation. These consumers directly overlap with the consumers of services offered by the Plaintiffs under the "NASHVILLE INK" mark.

11

36.     Upon information and belief, on or about November 18, 2024, Individual Defendants registered the URL name (https://www.nashvilleink.com) ("**Domain Name**"). Upon information and belief, Individual Defendants are currently the registrants of this Domain Name.

37.     The Domain Name is identical or confusingly similar to, and dilutive of, Plaintiffs' NASHVILLE INK mark, which was distinctive and famous when Individual Defendants registered the Domain Name. Upon information and belief, Individual Defendants were aware of Plaintiffs' rights in the NASHVILLE INK mark when they selected and registered the Domain Name, and knowingly and intentionally registered the Domain Name because of its similarity to the NASHVILLE INK mark.

38.     Defendants Rojas have no rights in or to any trademark or name that is similar to the Domain Name and is not known by any name that is similar to the Domain Name. Defendant Rojas' had no legitimate purpose for registering the Domain Name and did so only with bad faith intent to profit from the goodwill in the NASHVILLE INK mark and from use of the Domain Name as set out herein.

39.     Without Plaintiffs' authorization and subsequent to when Plaintiffs acquired protectable exclusive rights in the NASHVILLE INK mark, and after the NASHVILLE INK mark became famous, Individual Defendants posted a live website at the Domain Name. Defendants' Website remains active as of the filing of this complaint.

40.     Defendants Rojas intentionally used the Domain Name, which is confusingly similar to, and dilutive of, Plaintiffs' famous NASHVILLE INK mark, to divert internet users looking for Plaintiffs' Website to Defendant's Website.

41.     Upon further information and belief, Defendants Rojas used the Domain Name with bad faith intent to financially benefit by rapidly growing their business through search

12

engine optimization utilizing Plaintiffs' famous NASHVILLE INK mark in the Individual Defendants' own Domain Name and the goodwill associated with the NASHVILLE INK mark.

42.     Because the Domain Name is confusingly similar to the NASHVILLE INK mark, and Defendants' Website promotes and depicts services that are identical and related to Plaintiffs' services under the NASHVILLE INK mark and provides links to Individual Defendants' social media websites promoting services that are identical and related to Plaintiffs' services under the NASHVILLE INK mark, consumers are likely to be confused and naturally misled into believing that Plaintiffs authorized, approved, or are affiliated or connected with Defendants' Website and services promoted on the site, when that is not the case.

43.     Due to the similarity of the Domain Name and Plaintiffs' famous and distinctive NASHVILLE INK mark, consumers are likely to associate the Domain Name with Plaintiffs' mark, impairing the distinctiveness of Plaintiffs' NASHVILLE INK mark and, due to the false and misleading nature of the content on Defendants' Website, harming its reputation. Upon information and belief, Individual Defendants intended their use of a Domain Name so similar to Plaintiffs' famous and distinctive Nashville Ink Mark to cause consumers to associate the Domain Name with Plaintiffs' mark.

44.     Upon information and belief, Individual Defendants' acts alleged herein are willful, with the deliberate intent to trade on the goodwill of Plaintiff's NASHVILLE INK mark, cause confusion and deception online and in the marketplace, divert internet users looking for Plaintiffs' Website or Plaintiffs' services under the NASHVILLE INK mark to Defendants' Website, and divert potential sales of Plaintiffs' tattoo services to the Individual Defendants.

45.     Upon information and belief, the tattoo services Defendants Rojas offer under the Infringing Use/Mark do not adhere to the legal requirements as mandated by the State of

13

Tennessee for tattoo studio certification, quarterly studio health department inspections, and tattoo artist-studio affiliation, under TENN. CODE ANN. § 62-38-201-209 (*see* **Exhibit H**) and the Tennessee Department of Health Rules for Tattoo Artist and Tattoo Establishments under Tenn. Comp. R. & Regs. 1200-23-03 (*see* **Exhibit I**). The haphazard approach and care the Individual Defendants use with the professional tattoo trade is of serious concern to Plaintiffs' who have worked diligently to build and maintain a reputation for professionalism and safety. Any consumer confusion between the parties is detrimental and harmful to Plaintiffs' reputation.

46. Upon information and belief, Defendant Joseph does hold a current Tennessee tattoo artist permit; however, Defendant Lori does not hold a current Tennessee tattoo operator registration, as required under T.C.A. § 62-38-202.

47. Upon information and belief, Individual Defendants do not hold a current tattoo establishment state permit or local health department certificate for their home-studio, as required under T.C.A. § 62-38-202-204 and Tenn. Comp. R. & Regs. 1200-23-03.

48. Upon information and belief, Individual Defendants operating a tattoo services establishment out of their residential home does not comply with the Minimum Standards for Tattoo Establishments health department rules, as required under Tenn. Comp. R. & Regs. 1200-23-03-.03, specifically regarding living areas and premises.

49. On May 20, 2025, Plaintiffs' counsel sent a cease and desist letter to Defendants objecting to Defendants' use of the Infringing Use/Mark and to Defendants' registration and use of the Domain Name. Attached hereto as **Exhibit J** is a true and correct copy of Plaintiffs' counsel's May 20, 2025, cease and desist letter to Defendants.

50. On July 18, 2025, Plaintiffs' counsel received an email response from Defendants' counsel indicating that Defendants would not comply with the requests set out in

14

Plaintiffs' counsel's cease and desist letter. Attached hereto as **Exhibit K** is a true and correct copy of Defendants' counsel's July 18, 2025, email response to Plaintiffs' cease and desist letter.

51.     Upon information and belief, Defendants' acts are willful with the deliberate intent, and natural consequence, to trade on the goodwill of Plaintiffs' NASHVILLE INK mark, cause confusion and deception in the marketplace, and divert potential sales of Plaintiffs' services to Defendants. Consumer confusion is a natural consequence with Plaintiffs operating a tattoo shop in Nashville under the name NASHVILLE INK, with "Lior Rose" as the owner, and then subsequently Defendants also offer tattoo services under the same "Nashville Ink" name, and "Lori Rojas" as the contact. Not only are Defendants acting in the Plaintiffs' identical industry, but they are also offering the identical service, using the identical trade name, operating in the same geographical region, using the same geographical identifier, with unfortunately a confoundingly similar contact name. As a further insult to injury, in their logo the Defendants chose to use a *rose* as the sole symbol image, perhaps not so coincidentally the same symbol representing Plaintiff Rose's surname.

52.     Upon information and belief, Individual Defendants' infringing acts as alleged herein have caused and are very likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Individual Defendants' tattooing services, and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Individual Defendants' tattooing services originate from, are associated or affiliated with, or otherwise authorized by Plaintiffs'.

53.     Upon information and belief, Individual Defendants' infringing acts as alleged herein have unlawfully diluted Plaintiffs' distinctive and famous NASHVILLE INK Mark. Individual Defendants' actions create a likelihood of dilution by both blurring and tarnishment

thus impairing the distinctiveness of Plaintiffs' famous mark. Upon information and belief, Individual Defendants' deliberately chose to use the Infringing Use/Mark in order to trade on the goodwill, reputation, and fame established by Plaintiffs in their NASHVILLE INK Mark and to unjustly enrich themselves at the expense of the Plaintiffs. Upon information and belief, Individual Defendants have intentionally sought to imply an association with Plaintiffs in naming their product.

54.     Despite notice and knowledge of Plaintiffs' concerns, Defendants Rojas have continued the use of the Infringing Use/Mark. Defendants Rojas diluting conduct continues as of the filing of this complaint. Individual Defendants pattern of conduct and the refusal to respect Plaintiffs' service mark rights confirms Plaintiffs' belief that Individual Defendants deliberately and willfully selected the Infringing Use/Mark in order to improperly trade on the fame and goodwill of Plaintiffs' NASHVILLE INK mark and their enormous investment in said mark.

55.     Defendants' acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiffs and to their valuable reputation and goodwill with the consuming public for which Plaintiffs have no adequate remedy at law.

## COUNT I
## Federal Service Mark Infringement

56.     Plaintiffs repeat and allege paragraphs 1 through 55, as if fully set forth herein.

57.     Individual Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Individual Defendants' services and is likely to cause consumers to believe, contrary to fact, that Individual Defendants' services are sold, authorized, endorsed, or sponsored by Plaintiffs, or that Individual Defendants are in some way affiliated with or sponsored by Plaintiffs. Individual

16

Defendants' conduct therefore constitutes service mark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

58.     Upon information and belief, Individual Defendants have committed the foregoing acts of infringement with full knowledge of Plaintiffs' prior rights in the NASHVILLE INK mark and with the willful intent to cause confusion and trade on Plaintiffs' goodwill.

59.     Individual Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiffs, including but not limited to, their goodwill and reputation, and will continue to both damage Plaintiffs and confuse the public unless enjoined by this court. Plaintiffs have no adequate remedy at law.

60.     Plaintiffs are entitled to, among other relief, injunctive relief and an award of actual damages, Individual Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**COUNT 2**
**Federal Unfair Competition**
**(False Designation of Origin and False Endorsement)**

61.     Plaintiffs repeat and allege paragraphs 1 through 60, as if fully set forth herein.

62.     Individual Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Individual Defendants' services, and is likely to cause consumers to believe, contrary to fact, that Individual Defendants' services are sold, authorized, endorsed, or sponsored by Plaintiffs, or that Individual Defendants are in some way affiliated with or sponsored by Plaintiffs.

17

63. Individual Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

64. Upon information and belief, Individual Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistakes, or deception as to the affiliation, connection, or association of Individual Defendants with Plaintiffs.

65. Individual Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

66. Individual Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiffs, and to its goodwill and reputation, and will continue to both damage Plaintiffs and confuse the public unless enjoined by this court. Plaintiffs have no adequate remedy at law.

67. Plaintiffs are entitled to, among other relief, injunctive relief and an award of actual damages, Individual Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

### COUNT 3
### Federal Service Mark Dilution

68. Plaintiffs repeat and allege paragraphs 1 through 67, as if fully set forth herein.

69. Plaintiffs' NASHVILLE INK mark is distinctive and a "famous mark" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

70. Plaintiffs' NASHVILLE INK mark became distinctive and famous prior to the Defendants' acts as alleged herein.

18

71.     Individual Defendants' acts as alleged herein have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of Plaintiffs' famous NASHVILLE INK mark.

72.     Individual Defendants' acts as alleged herein have tarnished and will, unless enjoined, continue to tarnish, and are likely to tarnish Plaintiffs' NASHVILLE INK mark by undermining and damaging the valuable goodwill associated therewith.

73.     Individual Defendants' acts as alleged herein are intentional and willful in violation of Section 43(c)(1) of the Lanham Act, and have already caused Plaintiffs irreparable damage and will, unless enjoined, continue to so damage Plaintiffs, which have no adequate remedy at law.

74.     Plaintiffs are entitled to, among other relief, an award of actual damages, Individual Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest.


## COUNT 4
## Federal False Advertising

75.     Plaintiffs repeat and allege paragraphs 1 through 74, as if fully set forth herein.

76.     Individual Defendants purport, via their website, Facebook, and Instagram pages, to operate their tattoo service business from their "private studio." These services are actually performed from their residential home or the Defendants' tour bus. This is a grossly misleading statement made to consumers seeking the services of a proper tattoo business.

19

77.     Individual Defendants market, promote, and advertise via their website, Facebook, and Instagram pages to operate their tattoo service business under the assumed name "Nashville Ink", indicating a geographic origin of Nashville, Tennessee. These services are actually performed from Spring Hill, Tennessee which is not located in the city of Nashville, Tennessee. Rather, Spring Hill is its own distinct city, located approximately thirty miles south of Nashville. This is not only factually false, but also a misleading statement as it additionally confuses at least, and deceives at worst, tattoo consumers to believe Defendants have an affiliation, sponsorship, or endorsement by Plaintiffs who have exerted significant effort to building a legal, safe, and superior tattoo business with an excellent reputation and goodwill.

78.     Individual Defendants' conduct as alleged herein constitutes federal false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

79.     Individual Defendants' acts as alleged herein are intentional and willful in violation of Section 43(a) of the Lanham Act, and have already caused Plaintiffs irreparable damage and will, unless enjoined, continue to so damage Plaintiffs, which have no adequate remedy at law.

80.     Plaintiffs are entitled to, among other relief, an award of actual damages, Individual Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest.

## COUNT 5
## Federal Cybersquatting Under The Anti-Cybersquatting Consumer Protection Act

81.     Plaintiffs repeat and allege paragraphs 1 through 80, as if fully set forth herein.

20

82. Plaintiffs own all rights in and to the NASHVILLE INK mark, which is strong, and distinctive and famous, and was strong, and distinctive and famous as of the date that Individual Defendants registered the Domain Name.

83. Individual Defendants registered, and used the Domain Name, which is nearly identical, and confusingly similar to, and dilutive of Plaintiffs' NASHVILLE INK mark.

84. Individual Defendants registered, and used the Domain Name with an intent to profit from its confusing similarity to Plaintiffs' NASHVILLE INK mark. Among other things, upon information and belief:

(a) Individual Defendants registered the Domain Name, despite knowing that Individual Defendants had no rights in any name or mark and was not known by any name that was referenced or reflected in the Domain Name;

(b) Individual Defendants made no bona fide, non-infringing, commercial use or fair non-commercial use of the Domain Name;

(c) Individual Defendants intended to divert consumers looking for Plaintiffs' services online to Defendants' Website by exploiting the confusing similarity of the Domain Name and the NASHVILLE INK mark for Individual Defendants' commercial gain and leading to the tarnishing or disparagement the NASHVILLE INK mark;

85. Individual Defendants' conduct is directly and proximately causing substantial, immediate, and irreparable harm and injury to Plaintiffs, and to their goodwill and reputation, and will continue to damage Plaintiffs unless enjoined by this court. Plaintiffs have no adequate remedy at law.

86. Individual Defendants' conduct as alleged herein constitutes unlawful cybersquatting in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(d).

87. Plaintiffs are entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116 and 1125(d)(1)(C), including, among other injunctive relief, transfer of the Domain Name to Plaintiffs

88. Plaintiffs are further entitled to recover damages and Defendant's profits, enhanced as the court deems appropriate and equitable, in amounts to be proven at trial, pursuant to 15 U.S.C. § 1117(a). Alternatively, Plaintiffs are entitled to maximum statutory damages in the amount of $100,000 for the Domain Name pursuant to 15 U.S.C. § 1117(d).

89. Plaintiff is further entitled to recover its attorneys' fees and costs, together with prejudgment and post-judgment interest.

## COUNT 6
### Common Law / State Service Mark Infringement

90.     Plaintiffs repeat and allege paragraphs 1 through 89, as if fully set forth herein.

91.     Plaintiffs own common law service mark rights in the NASHVILLE INK mark.

92.     Individual Defendants continued use of the Infringing Mark as described above is likely to cause confusion or mistake or deception to consumers as to the origin, source, sponsorship, or affiliation of Individual Defendants' services and constitutes service mark infringement with respect to Plaintiffs' common law service mark rights in and to the NASHVILLE INK mark.

93.     As a direct and proximate result of Individual Defendants' wrongful conduct, Plaintiffs have suffered pecuniary and irreparable harm.

## COUNT 7
### Common Law / State Unfair Competition

94.     Plaintiffs repeat and allege paragraphs 1 through 93, as if fully set forth herein.

95.     Individual Defendants unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Individual Defendants' goods and services, and is likely to cause consumers to believe, contrary to fact, that Individual Defendants' goods and services are sold, authorized, endorsed, or sponsored by Plaintiffs, or that Defendant is in some way affiliated with or sponsored by Plaintiffs.

96. Individual Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

97. Upon information and belief, Individual Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Individual Defendants and Plaintiffs.

98. Individual Defendants' conduct as alleged herein constitutes unfair competition in violation of common law.

99. Individual Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiffs, and to its goodwill and reputation, and will continue to both damage Plaintiffs and confuse the public unless enjoined by this court.

100. Plaintiff is entitled to, among other relief, injunctive relief and pecuniary damage.

## COUNT 8
### State Service Mark Dilution

101. Plaintiffs repeat and allege paragraphs 1 through 100, as if fully set forth herein.

102. Plaintiffs' NASHVILLE INK mark is distinctive and famous within the meaning of T.C.A. § 47-25-513(a).

103. Plaintiffs' NASHVILLE INK mark became distinctive and famous prior to Defendants' acts as alleged herein.

104. Individual Defendants' acts as alleged herein are intentional and willful and have already caused Plaintiffs irreparable damage and will, unless enjoined, continue to so damage Plaintiff, which has no adequate remedy at law.

24

105.    Plaintiffs are entitled to, among other relief, an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action, together with prejudgment and post-judgment interest.

## COUNT 9
### State Deceptive Trade Practices

106.    Plaintiffs repeat and allege paragraphs 1 through 105, as if fully set forth herein.

107.    By engaging in the conduct described herein, which was willful and knowing, Individual Defendants have violated the Tennessee Consumer Protection Act, T.C.A. § 47-18-101-137. ("TCPA") and engaged in unfair and deceptive acts including, among others:

(2) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services; ...

(3) Causing likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another; ...

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have; ...

(7) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; ...

108.    Pursuant to T.C.A. § 47-18-109(b), *"[w]ithout regard to any other remedy or relief to which a person is entitled, anyone affected by a violation of this part may bring an action to obtain a declaratory judgment that the act or practice violates this part and to enjoin the person who has violated, is violating, or who is otherwise likely to violate this part ..."*

25

109.     Plaintiffs seek to enjoin Individual Defendants from continuing to use, advertise, promote, or sell tattoo services using the Infringing Use/Mark.

110.     Further, as a direct and proximate cause of Individual Defendants' actions, Plaintiffs have been damaged and are entitled to all remedies and damages permitted under the TCPA including actual damages, treble damages, injunctive relief, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment against Individual Defendants as follows:

1.     That Individual Defendants have violated Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)); and Section 43(d) of the Lanham Act (15 U.S.C. § 1125(d)).

2.     That Individual Defendants have violated state service mark rights under T.C.A. § 47-25-516;   engaged in unfair competition and deceptive trade practices violating T.C.A. § 47-18-104; engaged in state service mark dilution violating T.C.A. § 47-25-513(a).

3.     Granting an injunction and permanently enjoining the Individual Defendants, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

a.     Providing, selling, marketing, advertising, promoting, or authorizing any third party to provide, sell, market, advertise, or promote tattoo services bearing the mark Nashville Ink or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiffs' NASHVILLE INK mark;

b.    engaging in any activity that infringes Plaintiffs' rights in its NASHVILLE INK mark;

c.    engaging in any activity constituting unfair competition with Plaintiffs;

d.    engaging in any activity that is likely to dilute the distinctiveness of Plaintiffs' NASHVILLE INK mark;

e.    making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Individual Defendants' services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Plaintiffs, or (ii) Plaintiffs' services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Individual Defendants;

f.    using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiffs or tend to do so;

g.    registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the NASHVILLE INK mark or any other mark that infringes or is likely to be confused with Plaintiffs' NASHVILLE INK mark, or any goods or services of Plaintiffs, or Plaintiffs as their source; and

h.    aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (g).

4. Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Individual Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Plaintiffs or constitute or are connected with Plaintiffs' services.

5. Directing Individual Defendant to immediately cease all display, distribution, marketing, advertising, promotion, sale, offer for sale, and/or use of any and all packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating the NASHVILLE INK mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiffs' NASHVILLE INK mark, and to direct all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the US that distribute, advertise, promote, sell, or offer for sale Individual Defendants' goods or services to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, services, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials featuring or bearing the NASHVILLE INK mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Plaintiffs' NASHVILLE INK mark, and to immediately remove them from public access and view.

6. Ordering Individual Defendants to, within ten (10) days of the entry of final judgment, transfer to Plaintiffs registration of the Domain Name and registrations of any other domain names or social media names, pages, or handles owned or controlled by Individual

28

Defendant that are confusingly similar or dilutive of Plaintiffs' NASHVILLE INK mark (collectively, the "Prohibited Domain Names").

7.     Ordering that the Registrar, upon Plaintiffs' request, transfer registration of the Prohibited Domain Names to Plaintiffs.

8.     Granting an injunction permanently enjoining the Individual Defendants, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

a. owning, registering, trafficking in, or otherwise using any of the Prohibited Domain Names;

b. engaging in any activity that infringes Plaintiff's rights in its NASHVILLE INK mark;

c. engaging in any activity constituting unfair competition with Plaintiff;

d. engaging in any activity that is likely to dilute the distinctiveness of Plaintiff's NASHVILLE INK mark;

e. making or displaying any statement, representation, or other indication that is likely to lead the public or the trade to believe that (i) Individual Defendants' services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiffs or (ii) Plaintiffs' services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendants;

f. using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any

marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiffs or tend to do so;

g. registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating any mark that infringes or is likely to be confused with Plaintiffs' NASHVILLE INK mark, or any goods or services of Plaintiffs, or Plaintiffs as their source; and

h. aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (g).

10.     Granting such other and further relief as the Court may deem just and proper to prevent the public and trade from deriving the false impression that any website operated by or any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Individual Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiffs or constitute or are connected with Plaintiffs' tattoo or piercing services.

11.     Directing, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Individual Defendants to file with the court and serve upon Plaintiffs' counsel within thirty (30) days after service on Individual Defendants of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Individual Defendants have complied therewith.

9.     Awarding Plaintiffs an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

10. Directing that Individual Defendants account to and pay over to Plaintiffs as disgorgement all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiffs for the damages caused thereby.

11. Awarding Plaintiff punitive and exemplary damages as the court finds appropriate to deter any future willful infringement.

12. Awarding Plaintiff, upon Plaintiff's election, either:

a. an amount up to three times the amount of its actual damages and all of Individual Defendants' profits realized by its wrongful acts alleged herein, enhanced as appropriate to compensate Plaintiffs for the damages caused thereby, in accordance with Section 35(a) and (b) of the Lanham Act (15 U.S.C. § 1117(a), (b)); or

b. maximum statutory damages in the amount of $100,0000 for Individual Defendants' violation of/per domain name found to be in violation of Section 43(d) of the Lanham Act (15 U.S.C. § 1125(d)), in accordance with Section 35(d) of the Lanham Act (15 U.S.C. § 1117(d)).

13. Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiffs their costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

14. Awarding Plaintiffs interest, including prejudgment and post-judgment interest, on the foregoing sums.

15. Awarding such other and further relief as the Court deems just and proper.

Dated: November 14, 2025            Respectfully submitted,
        Nashville, Tennessee

                                    */s/ Barry Neil Shrum*
                                    Barry Neil Shrum (TN Bar No. 019703)
                                    Shrum Disney & Associates
                                    54 Music Square East, Suite 350
                                    Nashville, TN 37203
                                    barry@shrumdisney.com
                                    (615) 351-5130

                                    */s/ Dennis G. Disney*
                                    Dennis G. Disney (TN Bar No. 041547)
                                    Shrum Disney & Associates
                                    54 Music Square East, Suite 350
                                    Nashville, TN 37203
                                    dennis@shrumdisney.com
                                    (615) 351-5130


                                    *Attorneys for Plaintiffs*
                                    *Nashville Ink, Inc.*
                                    *Lior Rose*

32